967 F.2d 63
 UNITED STATES of America, Appellee,
v.
Eugene ROMERO, also known as Mike Mellon, also known as
Eugene Prince, also known as Fred, Defendant-Appellant,
Stephanie Romero, Sharece Walker, Ronald Carter, also known
as Ronald McKissick, also known as Justice, and
Randall Cannon, also known as Randy, Defendants.
 No. 1603, Docket 92-1153.
 United States Court of Appeals,
Second Circuit.
 Argued April 30, 1992.
Decided June 12, 1992.
 
 Lawrence A. Vogelman, Cardozo Crim. Law Clinic, New York City (Barry C. Scheck, Ellen Yaroshefsky, Michele A. Margolin, and Marianne Paoli, of counsel), for defendant-appellant.
 Deborah Landis, Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty. and Annmarie Levins, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee.
 Before: MESKILL and NEWMAN, Circuit Judges, and ZAMPANO,* District Judge.
 MESKILL, Circuit Judge:
 
 
 1
 This is an expedited appeal from a decision of the United States District Court for the Southern District of New York, Patterson, J., 786 F.Supp. 1173, denying appellant's motion to dismiss certain counts of a criminal indictment as barred by the Double Jeopardy Clause of the Fifth Amendment and by a prior plea agreement between appellant and federal prosecutors. Because the indictment does not constitute prosecution for the same offense as that to which appellant had previously pled guilty and because the prior plea agreement does not encompass the present indictment, we affirm the decision of the district court to deny the motion to dismiss.
 
 BACKGROUND
 
 2
 In 1987 Eugene Romero entered a guilty plea in the United States District Court for the District of Columbia, Parker, J. pursuant to an agreement between himself and the offices of the United States Attorneys for the District of Columbia and the Southern District of New York. That agreement provided that Romero would plead guilty to one count from each of two indictments then pending against him. In connection with the District of Columbia indictment (the D.C. indictment), Romero pleaded guilty to possession with intent to distribute 100 grams of heroin on April 21, 1987. In connection with the Southern District of New York indictment (the 1987 New York indictment), Romero pleaded guilty to a conspiracy to violate the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1961(1). The RICO conspiracy count of the 1987 New York indictment alleged a conspiracy to engage in racketeering acts beginning in 1980 and continuing through the date of the indictment. Romero was named in two of the twenty-nine racketeering acts alleged in that indictment. The first involved the murder of a man named Norman Bannister and the second concerned a conspiracy with nineteen other individuals to distribute and possess with intent to distribute heroin. After pleading guilty, Romero was sentenced and the remaining counts against him in each indictment were dismissed.
 
 
 3
 In 1991, Romero was again indicted in the Southern District of New York. That four count indictment (the 1991 Indictment) forms the basis for this appeal. Count One alleges that, beginning in late 1979, Romero conspired with others to violate federal narcotics laws. Seventeen of the thirty-five overt acts alleged to have been taken in furtherance of the conspiracy pre-date the 1987 plea agreement. Although none of the specific overt acts alleged in the 1991 indictment is identical to those alleged in the 1987 New York indictment, many of the same people are named in both indictments and are alleged to have engaged in similar conduct. Count Four of the 1991 indictment alleges that from 1979 until the date of the indictment, Romero engaged in a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(a). That count incorporates by reference the factual allegations contained in Count One. The other counts of the instant indictment do not concern us on this appeal.
 
 
 4
 Romero moved in the district court to dismiss Count One and Count Four of the 1991 indictment on the grounds that they violated the Fifth Amendment's prohibition against twice putting any person in jeopardy for the same offense and because the government was estopped from bringing those counts by virtue of the 1987 plea agreement. The government submitted a superseding indictment which clarified that, with regard to Count One, the narcotics conspiracy count, Romero could be convicted only for his conduct that occurred after the date of the 1987 plea agreement. The district court announced that it would instruct the jury to that effect.
 
 
 5
 The district court held that the superseding indictment violated neither the Double Jeopardy Clause of the Fifth Amendment nor the 1987 plea agreement between the government and Romero. The district court thus refused to dismiss the indictment. Romero now appeals, arguing that Count One, as currently drafted, violates the Double Jeopardy Clause and that both Counts One and Four, as currently drafted, are contrary to the terms of the 1987 plea agreement. Romero does not argue on appeal that Count Four is barred by the Double Jeopardy Clause.
 
 
 6
 On May 14, 1992 we affirmed Judge Patterson's decision by summary order, stating that an opinion would follow.
 
 DISCUSSION
 1. Appellate Jurisdiction
 
 7
 We first address briefly our jurisdiction over this interlocutory appeal. Federal Courts of Appeals are generally limited to hearing appeals only from "final decisions" of the district courts. 28 U.S.C. § 1291. However, because the Double Jeopardy Clause protects the right of an individual to be free from a second prosecution, rather than simply a second conviction, for the same offense, the Supreme Court has held that an appeal will lie from a pre-trial order denying a motion to dismiss an indictment on double jeopardy grounds. Abney v. United States, 431 U.S. 651, 656-62, 97 S.Ct. 2034, 2038-41, 52 L.Ed.2d 651 (1977). Similarly, at least in this Circuit, an order denying a colorable claim to dismiss an indictment for violation of a prior plea agreement may properly be appealed prior to a final judgment on the entire criminal case in the district court. United States v. Abbamonte, 759 F.2d 1065, 1071 (2d Cir.1985). But see United States v. Dederich, 825 F.2d 1317, 1321 (9th Cir.1987) ("[T]he majority of courts have denied interlocutory appeals grounded in plea-bargain promises.") (collecting cases). This appeal, therefore, is appropriately before us.
 
 2. Double Jeopardy
 
 8
 The Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." In arguing that Count One of the instant indictment is barred by this provision, Romero relies heavily on Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), in which the Supreme Court announced that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Id. at 521, 110 S.Ct. at 2093 (footnote omitted). Romero contends that the pre-plea conduct alleged in Count One of the indictment is the same conduct to which he pleaded guilty in 1987. He argues that, although the specific acts alleged to demonstrate the existence of the conspiracy may be different in the two indictments, the conspiracy itself is the same. Romero asserts that because the government plans to use this pre-plea conduct to prove an essential element of the offense, the fact that there was a conspiracy, the prosecution is barred.
 
 
 9
 In Grady, the criminal defendant, Thomas Corbin, allegedly intoxicated, had driven his automobile on the wrong side of the road and struck an oncoming car, causing the death of one person and serious injury to another. Corbin was charged with and pleaded guilty to two misdemeanor offenses involving driving under the influence of alcohol and failing to keep to the right of the median. Two months later, Corbin was indicted on various homicide and assault charges. The bill of particulars demonstrated that the prosecution would rely on Corbin's intoxication and his failure to remain on the correct side of the road in order to establish recklessness or negligence in connection with the homicide and assault charges. The Supreme Court held that because the prosecution would "prove the entirety of the conduct for which Corbin was convicted ... to establish essential elements of the homicide and assault offenses," prosecution for those offenses was barred by the Double Jeopardy Clause. Id. at 523, 110 S.Ct. at 2094.
 
 
 10
 As the Grady Court acknowledged, application of this analysis to the facts of that case was fairly straightforward. Id. at 522, 110 S.Ct. at 2093. Application of the Grady analysis to other situations, however, proved to be more difficult.
 
 
 11
 The Supreme Court revisited and attempted to clarify double jeopardy jurisprudence in United States v. Felix, --- U.S. ----, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). In that case, Felix was convicted in Missouri federal court of illegally attempting to manufacture methamphetamine during August 1987. Although that case involved only the shipment of certain precurser chemicals during one month, the government introduced evidence, pursuant to Fed.R.Evid. 404(b), of Felix's involvement in methamphetamine production in Oklahoma prior to the charged conduct in order to show criminal intent. Id. at 1380. After his conviction in Missouri, an indictment was filed in the United States District Court for the District of Oklahoma charging Felix with substantive and conspiracy counts involving the manufacture, possession and distribution of methamphetamine. After a jury trial Felix was convicted.
 
 
 12
 The Supreme Court held that the second prosecution was not barred by the Double Jeopardy Clause, stating that "no matter how much evidence of the Oklahoma transactions was introduced by the Government to help show Felix' state of mind, he was not prosecuted in the Missouri trial for any offense other than the Missouri attempt offense with which he was charged." Id. at 1382. The Court relied on the "principle that the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." Id. at 1383 (footnote omitted).
 
 
 13
 Count One of the 1991 indictment, as originally filed, charged Romero and others with conspiring to violate federal narcotics laws from 1979 through July 1991, the date of the indictment. The pending indictment, however, superseded the 1991 indictment, revising it so that Romero is now charged with conspiracy only for the period after his 1987 plea; for acts committed prior to his 1987 plea, Romero is now merely an unindicted co-conspirator. The district court made clear, and the government agreed, that in order to convict Romero the government must demonstrate that every element of his conspiracy offense happened after the date of the plea. The pre-plea conduct remains in the indictment as against Romero's co-defendants. Evidence of that conduct likely will be offered at trial against those co-defendants, and against Romero in order to demonstrate the background to the conspiracy. Under Felix, no matter how much evidence is offered of Romero's pre-plea conduct, his right not to be tried twice for the same offense will not have been violated.
 
 
 14
 Prosecution of Count One of the instant indictment, therefore, does not violate the Fifth Amendment's proscription against double jeopardy.
 
 3. Estoppel
 
 15
 Romero next claims that the 1987 plea agreement precludes the government from prosecuting Counts One and Four of the instant indictment. The written agreement itself does not speak directly to this issue. The agreement provides that Romero plead guilty to one count of possession with intent to distribute heroin and one count of RICO conspiracy. In exchange, the government promised to dismiss the remaining counts in the then-pending D.C. and New York indictments, not to pursue charges against Romero arising from an escape from a federal facility and to make certain recommendations with regard to sentencing.
 
 
 16
 Romero contends, however, that the Assistant United States Attorney (AUSA) in charge of the 1987 prosecution stated to Romero's attorney that the plea agreement "cleans up everything I now have." Romero argues that this statement prevents the government from indicting him on the basis of information they had at the time of the plea agreement. Romero further argues that certain statements made by the AUSA at the time of the 1987 plea indicate that the government possessed at that time information that would have supported the charges in Counts One and Four. Romero requests therefore that we dismiss those counts of this indictment or, alternatively, remand to the district court for factual determinations. We do not believe that either course is justified.
 
 
 17
 The government is clearly not prevented from pursuing Count One of the instant indictment. As noted above, that count charges Romero only with conduct that post-dates the 1987 plea agreement. We do not believe, and Romero does not seriously contend, that the government promised Romero in 1987 that it would not prosecute him for future conduct similar to that then charged. Count One therefore is not barred by the plea agreement.
 
 
 18
 Count Four of the instant indictment alleges that Romero engaged in a Continuing Criminal Enterprise (CCE) under 21 U.S.C. § 848(a). In order to be engaged in such an enterprise, a person must commit a felony drug offense as part of a continuing series of drug offenses "which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management," and obtain substantial income or resources from the enterprise. 21 U.S.C. § 848(c). There is no indication in the record before us, nor does Romero allege, that the government had information in 1987 sufficient to bring a CCE indictment against Romero.
 
 
 19
 The record shows that the AUSA clearly stated at the time of the plea that if, after the entry of the plea, further investigation uncovered proof of additional crimes, those crimes would be prosecuted. The Supreme Court has held that "Congress intended CCE to be a separate offense and that it intended to permit prosecution for both the predicate offenses and the CCE offense." Garrett v. United States, 471 U.S. 773, 786, 105 S.Ct. 2407, 2415, 85 L.Ed.2d 764 (1985). Even after Grady, separate prosecutions for CCE and its predicate offenses do not violate the Double Jeopardy Clause, at least where the CCE offense continues beyond the prior prosecution. See United States v. Scarpa, 913 F.2d 993, 1013 n. 8 (2d Cir.1990). Thus, CCE is an additional crime and there is no evidence on this record that in 1987 the government was in possession of evidence sufficient to support a prosecution for CCE. The government did not promise to refrain from prosecuting crimes antedating the plea agreement for which they did not have sufficient evidence to prosecute. Thus, Count Four is not barred by the 1987 plea agreement.
 
 CONCLUSION
 
 20
 Because the conspiracy count in the instant indictment only charges Romero with conduct in which he engaged after his guilty plea in 1987, it is not barred by either the Double Jeopardy Clause or by any agreement between Romero and prosecutors in 1987. The CCE charge is not barred by the 1987 plea agreement because there is no evidence that the government had sufficient evidence at that time to bring a prosecution against Romero on that charge, and the government made clear at the time that if further investigation uncovered additional criminal activity, Romero could be prosecuted.
 
 
 
 *
 Honorable Robert C. Zampano, United States District Judge for the District of Connecticut, sitting by designation